IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-101-LRR |
| Plaintiff, ) | |
| ) | COUNTS 1 THROUGH 18: |
| vs. ) | 18 U.S.C. § 1341 |
| ) | (Mail Fraud) |
| ROBERT MIELL, ) | |
| ) | COUNT 19: |
| Defendant. ) | 18 U.S.C. § 1623 |
| ) | (Perjury) |
| ) | |
| ) | COUNTS 20 & 21 |
| ) | 26 U.S.C. § 7206(1) |
| ) | (False Tax Return) |

## SUPERSEDING INDICTMENT

The Grand Jury Charges:

1.   At all times relevant to this Indictment, defendant ROBERT MIELL owned hundreds of rental properties in Linn County, Iowa. Defendant MIELL acquired, maintained, and offered these properties for rent using several companies that he operated out of an office at 1855 First Avenue SE, Cedar Rapids, Iowa. Those companies included Miell Property Management; Advanced Equities, Inc.; Equity Associates, Inc., Realtors; Mayfair Builders, Inc.; 21st Avenue Place, Inc.; and Madallion Park.

PRESENTED IN OPEN COURT
BY THE
FOREMAN OF THE GRAND JURY
IN THE PRESENCE OF THE
GRAND JURY
And filed 4/8/08
ROBERT L. PHELPS, CLERK

REC'D APR 0 8 2008

## COUNTS 1 THROUGH 6

## THE INSURANCE FRAUD SCHEME

### Introduction

2.   Paragraph 1 is hereby reincorporated by reference as if fully set forth herein.

3.   A. F. Insurance Company (AFI) provided insurance for defendant MIELL's rental properties. The AFI policies provided "actual cash value" (ACV) coverage for damages to the rental properties. The amount of the ACV payment was calculated as the estimated cost of the damage repairs minus depreciation to the damaged portion of the insured property. The AFI policies also provided additional "replacement cost value" (RCV) coverage for the actual replacement cost of damages to the insured properties. These additional RCV payments for damages would be made only after: (1) the insured damages were actually repaired; and (2) AFI received proof of the actual cost of the completed repairs.

### The Scheme to Defraud AFI

4.   Beginning at least as early as December 11, 2001, and continuing until at least December 9, 2002, in the Northern District of Iowa and elsewhere, defendant MIELL devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations. In particular, defendant MIELL fraudulently collected RCV payments pursuant to his property insurance policies by falsely reporting to AFI that he had paid for completed roof repairs

on approximately 145 hail-damaged properties and by providing false documentation in support of these claims.

## Execution of the Scheme to Defraud AFI

5. The scheme and artifice to defraud and obtain money was carried out, in part, as follows:

    a. On or about May 10, 2001, a hailstorm damaged the roofs of more than 100 rental properties owned by defendant MIELL and insured by AFI.

    b. Defendant MIELL submitted claims to AFI for damages to his properties, seeking ACV payments for the estimated cost of the damage repairs minus depreciation to the damaged portion of the insured property. AFI paid defendant MIELL in excess of $190,000 comprising the ACV payments. Defendant MIELL also sought additional RCV payments for the cost of replacing the roofs.

    c. Beginning on December 11, 2001, and ending on December 9, 2002, defendant MIELL sought RCV payments from AFI by falsely reporting that roof repairs had been completed on 145 of his insured properties when, in truth and in fact, as defendant MIELL well knew, the roofs of these 145 properties had not been repaired.

    d. In support of his false claims to AFI, defendant MIELL provided AFI with copies of invoices he represented were from roofing

      companies that had completed hail-damage repair on the insured properties. In truth and in fact, as defendant MIELL well knew, the purported invoices were fabricated. Some of the purported invoices defendant MIELL submitted to AFI were from roofing companies that did not exist. Other purported invoices defendant MIELL submitted to AFI were from roofing companies that existed but that had done no work on the insured properties.

e. Also in support of his false claims to AFI, defendant MIELL provided AFI with copies of checks that defendant MIELL represented were used to pay the hail-damage repair invoices described above. In truth and in fact, as defendant MIELL well knew, he had not used these checks to pay for hail-damage repairs. The copied checks were never disbursed or cashed. The roofing companies shown as the payees on the checks either did not exist or had not done work on the insured properties.

f. Relying on, and because of, defendant MIELL's false claims and false documentation, AFI mailed approximately $336,000 in RCV payments to pay defendant MIELL for nonexistent roof repair payments.

## The Mailings

6.  On or about the following dates, within the Northern District of Iowa and elsewhere, defendant ROBERT MIELL, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, did knowingly cause the following items to be delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEMS MAILED/ADDRESSEE |
|---|---|---|
| 1 | November 27, 2002 | Six checks (## 758444, 758455, 758457, 758460, 758472, 758475,) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |
| 2 | November 27, 2002 | Seven checks (## 758464, 758466, 758468, 758471, 758477, 758479, 758480) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |
| 3 | December 11, 2002 | Nine checks (## 759726, 759728, 759730, 759732, 759733, 759735, 759737, 759740, 759741) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |
| 4 | December 11, 2002 | Eight checks (## 759779, 759780, 759781, 759782, 759784, 759786, 759787, 759788) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |
| 5 | December 11, 2002 | Eight checks (## 759725, 759750, 759751, 759752, 759753, 759754, 759755, 759773) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |

| COUNT | DATE | ITEMS MAILED/ADDRESSEE |
|---|---|---|
| 6 | December 11, 2002 | Nine checks (## 759756, 759758, 759759, 759760, 759761, 759774, 759775, 759776, 759777) mailed to Cedar Rapids, Iowa, from AFI in Des Moines |

This was in violation of Title 18 United States Code § 1341.

## COUNTS 7 THROUGH 18

## THE DAMAGE DEPOSIT FRAUD SCHEME

### Introduction

7. Paragraph 1 is hereby reincorporated by reference as if fully set forth herein.

8. Before leasing or renting one of his properties to a renter, defendant MIELL required the renter to provide a damage deposit. This damage deposit – less the costs of any necessary cleaning, repairs, or replacements – was to be returned to the renter at the end of the lease period.

9. At the conclusion of a rental period, defendant MIELL ordered his staff to inspect, clean, and repair any damage to the rental unit. Employees kept records of the time spent and repairs made to the property. Likewise, if replacements (such as window screens) were made to the rental units, those additional expenses were noted. These costs were reflected on a damage-deposit-return form, commonly entitled Summary of Move-out Work form, that was provided to defendant MIELL by his employees.

## The Scheme to Defraud Renters

10.     Beginning at least as early as 2000 and continuing until at least 2007, in the Northern District of Iowa and elsewhere, defendant MIELL and others known and unknown to the grand jury devised and intended to devise a scheme and artifice to defraud and to retain money by means of false and fraudulent pretenses and representations. In particular, defendant MIELL fraudulently kept renters' damage deposits at the conclusion of their rental periods by falsely informing the renters they caused damages to the rental property and that the cleaning, repair, and replacement costs were equal to or in excess of the amount of the renters' damage deposits.

## Execution of the Scheme to Defraud Renters

11.     The scheme and artifice to defraud and to obtain money was carried out, in part, as follows:

      a.    Upon receiving the damage-deposit-return form, commonly called the Summary of Move-out Work form, defendant MIELL inflated the costs and replacements as determined by his staff so as to fraudulently make the costs of cleaning, repairs, and replacements meet or exceed the amount of the renter's damage deposit.

      b.    Defendant MIELL then directed his staff to notify the renter that the renter would either not receive any of their damage deposit or that the renter owed defendant MIELL money because the costs of cleaning, repairs, and replacements met or exceeded the renter's

   damage deposit. In this manner, defendant MIELL fraudulently kept portions of renters' damage deposits.

 c. If a renter sued defendant MIELL for the return of their damage deposit, defendant MIELL would create, or cause to be created, false and fraudulent invoices from a company called "The Home Doctor" that purported to constitute a bill sent to defendant MIELL for the costs of cleaning, repairs, and replacements to the rental unit. Defendant MIELL would also at times write checks or cause checks to be written to the "The Home Doctor" that were never actually disbursed or cashed. Defendant MIELL would then produce, or cause others to produce, these false and fraudulent documents, invoices, and checks to the Iowa District Court for Linn County as alleged proof of the costs of cleaning, repairs, and replacements. In this manner, defendant MIELL fraudulently kept, or attempted to keep, portions of renters' damage deposits.

## The Mailings

12. On or about the following dates, within the Northern District of Iowa and elsewhere, defendant ROBERT MIELL, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, did knowingly cause the following items to be placed in an authorized depository for mail matter and to be sent and delivered by the United States Postal Service according to directions thereon:

| COUNT | DATE | ITEMS MAILED/ADDRESSEE |
|---|---|---|
| 7 | December 2002 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 2207 Kenrich Drive, SW, Cedar Rapids, IA |
| 8 | December 2002 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 4002 Westover Road, SE, Cedar Rapids, IA |
| 9 | December 2002 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 3212 Kenrich Drive, SW, #10, Cedar Rapids, IA |
| 10 | December 2002 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 603 Olive Drive, NW, Cedar Rapids, IA |
| 11 | First Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 2922 O Avenue, NW, #6, Cedar Rapids, IA |
| 12 | First Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 1615 C Avenue, NE, Cedar Rapids, IA |
| 13 | First Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 309 7th Avenue, Hiawatha, IA |
| 14 | First Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 1917 K Street, SW, Cedar Rapids, IA |
| 15 | Second Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 1025 3rd Street (east unit), Marion, IA |
| 16 | Third Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 3417 Eastern Avenue, NE, Cedar Rapids, IA |

| COUNT | DATE | ITEMS MAILED/ADDRESSEE |
|---|---|---|
| 17 | Third Quarter of 2003 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 1911 Northbrook Drive, NE, Cedar Rapids, IA |
| 18 | Second Quarter of 2004 | Notice regarding damage deposit from 1855 First Avenue SE, Cedar Rapids, IA, to 119 West Post Road, NW, Cedar Rapids, IA |

This was in violation of Title 18 United States Code § 1341.

## COUNT 19

## PERJURY

13. In January 2008, in Cedar Rapids, Iowa, a federal civil jury trial took place in which AFI was the plaintiff and defendant ROBERT MIELL was the defendant. AFI had sued MIELL claiming he fraudulently obtained RCV payments. One of the material matters at the trial involved defendant's reliance on his insurance agent, including whether AFI sent the RCV payments to defendant MIELL directly through the United States Mail or the payments were sent to defendant MIELL's insurance agent.

14. On January 8, 2008, through January 11, 2008, defendant ROBERT MIELL appeared as a witness at the jury trial and was placed under oath to provide testimony.

15. On January 8, 2008, and January 9, 2008, in the Northern District of Iowa, defendant ROBERT MIELL, while testifying under oath in a proceeding before the United States District Court for the Northern District of Iowa, knowingly made the following false material declarations in response to questions with respect to the material matter regarding as alleged above:

Question: Is it your testimony to this Judge and this jury that you never received a check from American Family paying you for damage to the roofs from the hailstorm at your offices? Is that your testimony?

Answer: <u>I don't recall that, sir.</u>

Question: Don't recall what?

Answer: <u>That I received checks mailed directly to me from American Family's office in Des Moines.</u>

\* \* \*

Question: Did you receive any of these payments through the United States Mail?

Answer: <u>I don't recall that.</u>

Question: Did you receive these payments in one envelope, two envelopes, three envelopes, or four?

Answer: <u>I don't recall because to my knowledge, Mr. Throlson would call and say that he had checks and I would go to his office and pick them up.</u>

\* \* \*

Question: Is it your testimony to this Judge and this jury that the checks were not taken – the replacement cost benefit checks were not taken by the United States Postal Service from Des Moines directly to your office?

Answer: <u>To the best of my knowledge, that's correct.</u>

\* \* \*

Question: And if I understand your testimony yesterday to questions by Mr. Proctor, you testified that all the checks went to Mr. Throlson for settlement of your replacement cost value. Is that what your testimony was yesterday?

Answer: <u>Yes it was.</u>

\* \* \*

| | |
|---|---|
| Question: | And just so I'm clear, it's your sworn testimony today that you did not receive any of the replacement cost value checks through the mail. Is that your testimony today? |
| Answer: | <u>I received them at Mr. Throlson's office.</u> |

16. The underscored testimony of defendant ROBERT MIELL, as he then and there well knew and believed, was false in that the replacement cost value checks were mailed through the United States Postal Service from AFI in Des Moines, Iowa, to defendant MIELL's office address at 1855 First Avenue SE, Cedar Rapids, Iowa 52402.

This was in violation of Title 18, United States Code, Section 1623.

## COUNT 20

## FALSE TAX RETURN

17. On or about April 15, 2002, in the Northern District of Iowa, defendant ROBERT MIELL did willfully make and subscribe, under penalty of perjury, to a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for the calendar year 2001. The return was false and fraudulent as to a material matter in that it failed to include as income the RCV funds defendant received from AFI. In truth, as defendant then and there well knew and believed, defendant obtained those funds through fraudulent means and they were not used for their intended purpose, therefore constituting taxable income.

This was in violation of Title 26, United States Code, Section 7206(1).

## COUNT 21

## FALSE TAX RETURN

18.     On or about September 15, 2003, in the Northern District of Iowa, defendant ROBERT MIELL did willfully make and subscribe, under penalty of perjury, to a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for the calendar year 2002. The return was false and fraudulent as to a material matter in that it failed to include as income the RCV funds defendant received from AFI. In truth, as defendant then and there well knew and believed, defendant obtained those funds through fraudulent means and they were not used for their intended purpose, therefore constituting taxable income.

This was in violation of Title 26, United States Code, Section 7206(1).

A TRUE BILL

/s/ _____  4/8/08
Foreperson            Date

MATT M. DUMMERMUTH
United States Attorney

By: _____
C.J. WILLIAMS
Assistant United States Attorney