**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT MIELL,

        Defendant.

No. CR07-101-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**DEFENDANT'S MOTION TO**
**WITHDRAW GUILTY PLEAS**

---

**TABLE OF CONTENTS**

I. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   A. *Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   B. *"Fair And Just Reason" To Withdraw The Pleas* . . . . . . . . . . . . . . 18
      1. *Rule 11 Procedure* . . . . . . . . . . . . . . . . . . . . . . . . . 18
         a. *Possible maximum sentences* . . . . . . . . . . . . . . . . . 19
         b. *Authority to order restitution* . . . . . . . . . . . . . . . 26
      2. *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . 29
         a. *Applicable standards* . . . . . . . . . . . . . . . . . . . . 29
         b. *Ripeness* . . . . . . . . . . . . . . . . . . . . . . . . . . 32
         c. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 34
            i. *Deficient performance* . . . . . . . . . . . . . . . . 34
            ii. *Prejudice* . . . . . . . . . . . . . . . . . . . . . . 37
   C. *Other Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
      1. *Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
      2. *Time Between Guilty Pleas and Motion To Withdraw* . . . . . . 41
      3. *Prejudice to the prosecution* . . . . . . . . . . . . . . . . . . . 42

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

The court is called upon here to consider whether there is any merit to the defendant's contention that he should be allowed to withdraw his guilty pleas to charges of mail fraud and perjury on the grounds that his guilty pleas were invalid because the court failed to advise him of the maximum possible sentence, its authority to order restitution, and were the product of ineffective assistance of counsel.

## I. INTRODUCTION

### A. Factual Background

This criminal case has its origins in a federal civil case between defendant Robert Miell and his former insurer, American Family Mutual Insurance Company ("American Family"). On October 20, 2004, American Family filed a complaint, in this court, seeking compensatory and punitive damages from defendant Miell for, *inter alia*, fraudulent misrepresentations and breach of contract. *See* Complaint, *American Family Mut. Ins. Co. v. Miell*, C04-0142-JSS (docket no. 2). American Family asserted that Miell had schemed to defraud American Family of payments for repairs of hail damage to the roofs of over one hundred rental properties owned by defendant Miell, based on allegations that, contrary to Miell's representations to obtain such payments, the roofs had not already been

repaired.  Before this civil case could come to trial, defendant Miell was indicted in this court on November 28, 2007, and charged with nineteen counts of mail fraud, in violation of 18 U.S.C. § 1341.  The first six counts of the Indictment centered on Miell's scheme to defraud American Family by making fraudulent insurance claims for insurance payments on his hail-damaged rental properties.  Indictment, *United States v. Miell*, CR07-101-MWB (docket no. 1).

The jury trial in the civil case began on January 7, 2008.  Following six-days of trial, the jury returned a verdict in American Family's favor, awarding it compensatory damages of  $547,764.44 as a result of Miell's breach of contract, $339,100.78 on its claim of fraudulent misrepresentation and punitive damages of $1,017,332.30.  *See* Verdict Form, *American Family Mut. Ins. Co.*, C04-0142-JSS (docket no. 147).  On January 31, 2008, judgment was entered accordingly.   On February 14, 2008, defendant Miell filed a Motion For Judgment As A Matter of Law And/Or To Alter Or Amend The Judgment.  *See* Motion For Judgment As A Matter Of Law And/Or To Alter Or Amend The Judgment, *American Family Mut. Ins. Co.*, C04-0142-JSS (docket no. 165).  On March 4, 2008, American Family filed a timely resistance to defendant Miell's motion.  In its brief, in discussing the appropriateness of the jury's punitive damage award, American Family pointed to the possible criminal penalties for Miell's fraudulent actions, including the possibility that the criminal sentences could be ran consecutively:

> So, counting only the 145 claims at the core of this lawsuit, it appears that Nau mailed sixty different envelopes carrying replacement cost checks to Miell.  Those mailings of replacement cost checks were an integral part of Miell's fraudulent scheme—in fact, those mailings were the *goal* of the scheme.  Therefore, Miell could be subject to up to sixty charges under 18 U.S.C. section 1341.

> For each of those sixty charges, Miell could be imprisoned up to "20 years," for a total possible prison sentence of 1200 years. 18 U.S.C. § 1341. In addition, for each of those sixty charges, Miell could be fined. *See id.* Arguably, those fines could be as high as $250,000 for each of he sixty mail fraud counts, *see* 18 U.S.C. § 3571(b)(3), for a total federal fine of $15,000,000.

> Summarizing, as a result of his insurance fraud scheme against American Family, Miell could be subject to 1200 years in federal prison. . .added to the enormous potential federal liability of $15,000,000. . .

American Family Br. at 40-41, *American Family Mut. Ins. Co.*, C04-0142-JSS (docket no. 182); Gov't Ex.1, *United States v. Miell*, CR07-101-MWB (docket no. 219-1). Defendant Miell's attorney in the civil lawsuit, Web Wassmer, mailed Miell a copy of American Family's brief on March 14, 2008. Wassmer subsequently discussed this brief with Miell.

Beginning in February 2008, attorney Monty Brown provided defendant Miell with criminal representation in this case. Brown acted as Miell's lead criminal attorney. In April 2008, attorney William Kutmus also undertook to represent Miell in this case. In his role as lead defense counsel, Brown reviewed the prosecution's discovery file on numerous occasions and sent Kutmus summaries of his work and investigation on the case and met with Kutmus to evaluate possible strategies and arguments.

Brown had only limited discussions with Miell about pleading guilty until late spring or early summer of 2008. In the summer of 2008, Brown and Miell discussed the pros and cons of pleading guilty and Brown had his first conversations with Miell about the possible penalties he faced. During his discussions with Miell, Brown specifically discussed the fact that each conviction on the mail fraud charges carried a maximum penalty of 20 years imprisonment and each conviction on the perjury charges carried a possible maximum sentence of five years imprisonment. Brown also discussed with Miell the possibility of

consecutive sentences, advising Miell that he thought the likelihood of that occurring was "highly unlikely." Moreover, Brown discussed the topic of restitution with Miell. From these conversations, Miell was aware that the prosecution's expert had estimated the potential restitution in his case at approximately $1,200,000.

In July 2008, Brown "crunched the guidelines" to determine what the possible guideline sentence would be for Miell. From his calculations, Brown concluded that, at worst, Miell would be assessed at an offense level of 29. Following this determination, Miell authorized Kutmus to begin negotiations on a possible plea agreement. On August 19, 2008, Brown faxed to Miell a copy of a proposed written plea agreement he had received from the prosecution. The proposed plea agreement included the following provision regarding the possible penalties Miell faced for each of the mail fraud counts:

> A.____The defendant understands Counts 1 and 7 of the Superseding Indictment (the mail fraud counts) are each punishable by up to 20 years' imprisonment without the possibility of parole; a fine of up to $250,000 or twice the gross gain or loss (whichever is greater); and a mandatory special assessment of $100; and a term of supervised release of up to three years.
> . . .
> 2.____ The defendant understands that restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence.

Proposed Plea Agreement at ¶¶ 1(A), 2; Gov't Ex. 2, *United States v. Miell*, CR07-101-MWB (docket no. 230-1). The proposed plea agreement also included the following provisions regarding victim restitution:

> 10._____ The defendant agrees to pay full restitution to all identifiable victims of the fraud schemes to which he is pleading guilty. The defendant further understands that the amount of loss sustained by each victim will be determined during the course preparation of the presentence investigation

report. The defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. The defendant understands that full restitution will be ordered regardless of the defendant's financial resources. The defendant agrees that any restitution imposed will be non-dischargeable by any bankruptcy proceeding and he will not seek a discharge or a finding of dischargeability as to the restitution obligation. The defendant agrees to make restitution to all victims of the mail fraud schemes to which he has pled guilty and his obligation to make restitution is not limited to the specific counts of conviction reflecting individual mailings made in relation to the underlying fraudulent schemes.

11.____ In furtherance of defendant's obligation to cooperate in compensating victims of his crimes, with respect to the mail fraud scheme involving insurance payments, the defendant will, no later than the time of sentencing, pay to American Family Insurance Company $336,541.26, representing the amount of RCV payments defendant wrongly received.

Proposed Plea Agreement at ¶¶ 10-11; Gov't Ex. 2.

After consulting with counsel, defendant Miell rejected the prosecution's proposed plea agreement. After Miell rejected the proposed plea agreement, Brown continued in his efforts at trial preparation. During the course of his representation of Miell, Brown spent between 75 and 150 hours preparing for trial. Defendant Miell provided Brown with several lists of potential witnesses. Brown, along with a private investigator, Jim McDonald, conducted interviews of these potential witnesses. Based on Brown's knowledge and experience, as well as information gained from his and McDonald's interviews of possible witnesses, Brown rejected some of Miell's proposed witnesses. Brown, ultimately, identified between eight and twelve witnesses for trial. Brown had subpoenas prepared for these witnesses but did not have them served. Brown had several

reasons for not serving the subpoenas immediately. First, several of the witnesses were Miell's employees who were willing to testify on his behalf and he did not anticipate having any trouble serving them. Second, Brown anticipated the trial lasting between ten and fifteen days and wanted to see how fast the trial was proceeding before deciding when to subpoena his witnesses. Finally, he anticipated that some of the witnesses he intended to call would be called by the prosecution in its case-in-chief, thereby negating Brown's need to subpoena them for the defense.

Brown also prepared approximately 200 exhibits for trial and reviewed the prosecution's proposed exhibits. In addition, Brown prepared jury instructions for a trial on all counts and filed objections to the prosecution's proposed instructions. Moreover, Brown prepared and filed two motions in limine in which he sought to exclude nine categories of evidence as well as preventing the prosecution from making two lines of argument. *United States v. Miell*, CR07-101-MWB (docket nos. 82 and 87).

In later December 2008, Brown and Kutmus met with Miell and told him, in frank terms, that, in their best assessment of his case, he could not prevail on any of the mail fraud or perjury counts against him. Brown and Kutmus further advised Miell that his best solution was to plead straight up to those charges in hopes of gaining some good will from a plea and go to trial on the tax evasion charges. Brown and Kutmus had long discussions with Miell regarding the statutory sentencing factors found in 18 U.S.C. § 3553(a), the effect of the United States Supreme Court decision in *Gall v. United States*, 128 S. Ct. 586 (2007) and the rights Miell would be giving up by pleading guilty, as well as the possible penalties Miell faced at sentencing. Shortly after this meeting, Brown again met with Miell at Brown's law office, at which time Miell agreed to plead guilty to the mail fraud and perjury charges.

Trial on all counts was set to begin on Monday, January 5, 2009. On Friday, January 2, 2009, Miell informed the court of his intention to plead guilty to Counts 1 through 20. As a result of defendant Miell's late decision to plead guilty, a change of plea hearing was scheduled for Saturday, January 3, 2009. On January 3, 2009, Brown drove with Miell from Des Moines, Iowa, to Sioux City, Iowa, for the change of plea hearing.[1] During the trip, Brown again discussed with Miell what was going to occur during the change of plea hearing. At no time during the trip, the duration of which was significantly extended by an on-going ice storm, did Miell tell Brown that he did not wish to plead guilty.

At his change of plea hearing, in response to the court's inquiry about the level of formal education he had completed, Miell responded, "Up through some law school." Plea Tr. at 4, *United States v. Miell*, CR07-101-MWB (docket no. 169). The court then made the following inquiry about Miell's opportunity to consult with his counsel about his decision to plead guilty:

> THE COURT: And have you had a full, fair, and complete opportunity to consult with your lawyers about your decision to plead guilty?
>
> THE DEFENDANT: Yes, I have, Your Honor.

Plea Tr. at 8-9. After discussing the elements the prosecution is required to prove for each of the charged offenses, the court had the following colloquy with Miell regarding the maximum possible sentences for the charges against him:

> THE COURT: Okay. Now, I also have to advise you what the maximum possible penalties are by statute. It doesn't

_____

[1] Kutmus drove separately to Miell's change of plea hearing.

mean what your likely sentence is going to be. I only have to — because I have no idea what your likely sentence is going to be at this point. But I have to advise you what the maximum possible penalties are.

On Counts 1 through 18, it's up to 20 years' imprisonment without the possibility of parole; a fine of up to $250,000 on each count; and a mandatory special assessment of a hundred dollars and a period of supervised release for up to five years. Do you understand that's what the maximum penalties are on Counts 1 through 18?

THE DEFENDANT:        Yes, I do, Your Honor.

THE COURT:        Okay. And on Counts 19 and 20 the maximum term of imprisonment is up to 5 years without the possibility of parole, a fine of up to a quarter of a million dollars on each count, and you could receive both the fine and the maximum sentence on all of these charges and a —I think I said that, a fine of up to $250,000 or both and a special assessment of a hundred dollars on each count and a maximum period of supervised release of 3 years. Do you understand those are the maximum penalties?

> THE DEFENDANT: Yes, I do, Your Honor.

Plea Tr. at 12.

The court then engaged in the following discussion with Miell over his decision to plead guilty to these counts and not proceed to trial:

> THE COURT: Okay. Now, have you had a full, fair, and complete opportunity to consult with Mr. Kutmus and Mr. Brown about your decision to try and plead guilty today?
>
> THE DEFENDANT: I have, Your Honor.
>
> THE COURT: And have you had a full, fair, and complete opportunity to discuss with Mr. Kutmus and Mr. Brown your decision on whether to go to trial on all of the counts or whether to plead guilty on Counts 1 through 18 and go to trial on the tax counts? I mean, have you had all the time you feel is necessary to discuss all of the various options and weigh what you and your lawyers think are in your best interest?
>
> THE DEFENDANT: Yes, I have, Your Honor.
>
> THE COURT: Are you satisfied with the advice and counsel you've received from Mr. Kutmus and Mr. Brown?
>
> THE DEFENDANT: Yes, I am, Your Honor.

Plea. Tr. at 25.

The court also inquired about the voluntariness of Miell's decision to plead guilty and had the following colloquy with him on the subject:

| | |
|---|---|
| THE COURT: | I have to ensure your decision to plead guilty is a voluntary decision, so I want to ask you—you're a very well-educated man. You understand what the word voluntary means. Is this a voluntary decision that you've come to? |
| THE DEFENDANT: | Yes, it is, Your Honor. |
| THE COURT: | And have you made this decision to plead guilty to Counts 1 through 20 because with the advice of your lawyers you believe that's what's best for you to do? |
| THE DEFENDANT: | I do so. |
| THE COURT: | And has anybody promised you anything to try and induce you to plead guilty? |
| THE DEFENDANT: | No. |
| THE COURT: | Has anybody pressured you or threatened you or forced you or coerced you in any way to try and get you to plead guilty? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Have you understood all of the questions I've asked you today? |

THE DEFENDANT:     Yes, I have, Your Honor.

THE COURT:         Is there anything you want me to
                   go back over?

THE DEFENDANT:     No, there's not, sir.

Plea. Tr. at 33.

Following this discussion, the court then asked Miell how he was pleading to the

charges:

THE COURT:         Mr. Miell, how do you plead to
                   Counts 1 through 20?  Guilty or
                   not guilty?  And you can pick and
                   choose among the counts if you
                   want to.  But how do you plead to
                   Counts 1 through 20?

THE DEFENDANT:     Guilty, Your Honor.

THE COURT:         Are your sure?

THE DEFENDANT:     Yes, I am, Your Honor.

THE COURT:         You sure you're sure?

THE DEFENDANT:     Yes, I am.

Plea Tr. at 34-35.  Following this exchange, the court then made these findings:

THE COURT:         Okay.  I'm going to go ahead, Mr. Miell,
                   and accept your guilty pleas to Counts 1
                   through 20.  I'm going to make the
                   following findings:  I find your decision
                   to plead guilty is a knowing, intelligent,
                   and voluntary decision made after you've
                   had an opportunity to have your lawyers
                   review the government evidence and after

you've had an opportunity to fully explore with your lawyers whether it's in your best interests to plead guilty.

I further find you're competent both mentally and physically to make the decision to plead guilty.

I further find that you understand the nature of the charges against you, you understand the maximum possible punishments, you understand the rights to trial by jury, and that you understand that by pleading guilty this afternoon you give up probably forever your right to have a jury decide whether you're guilty of Counts 1 through 20.

And I further find that there's a factual basis for your plea. So I go ahead and adjudge you guilty on Counts 1 through 20.

Plea. Tr. at 35.

At no time during or after the plea hearing did Miell ever express to Brown that he was confused about the maximum penalties he was facing by pleading guilty.

### B.  *Procedural Background*

In the original Indictment (docket no. 1), handed down on November 28, 2007, a Grand Jury charged defendant Robert Miell with nineteen counts of mail fraud arising, in the case of Counts 1 through 6, from an alleged scheme to defraud American Family of payments for repairs of hail damage to the roofs of over one hundred rental properties owned by defendant Miell, based on allegations that, contrary to Miell's representations

to obtain such payments, the roofs had not already been repaired, and arising, in the case of Counts 7 through 19, from an alleged scheme to defraud renters of their damage deposits on the rental properties by inflating cleaning and repair costs that Miell purportedly incurred when the renters moved out. A Superseding Indictment (docket no. 29) followed on April 8, 2008; and, a Second Superseding Indictment (docket no. 60) followed on September 24, 2008.

On October 21, 2008, a Third Superseding Indictment was returned against Miell, charging him with eighteen counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 1 through 18), one count of perjury during a deposition (Count 19), in violation of 18 U.S.C. § 1621, two counts of perjury before the court, in violation of 18 U.S.C. § 1623 (Counts 20 and 21), and two counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 22 and 23). More specifically, Counts 1 through 6 are based on the alleged "insurance fraud scheme," described briefly above, which Miell allegedly pursued from at least as early as December 11, 2001, until at least December 9, 2002, and Counts 7 through 18 are based on the alleged "damage deposit fraud scheme," described briefly above, which Miell allegedly pursued from at least as early as 2000 until at least 2007. Count 19 charges "perjury in deposition," based on an allegedly false statement by Miell in a deposition on April 26, 2006, in a civil action by American Family against Miell to the effect that Miell had not signed the name "J.J. McManus" to a billing invoice, when he had done so. Count 20 charges "perjury before the court," based on allegedly false testimony, on or about January 8, 2008, in the trial of the civil action by American Family against Miell, to the effect that Miell had power of attorney to sign J.J. McManus's name, when he did not have such power of attorney, all in violation of 18 U.S.C. § 1623. Count 21 charges "perjury before the court," based on allegedly false testimony, on or about January 8 or 9, 2008, also in the trial of the civil action by American Family against Miell,

that checks from American Family for replacement cost value were not mailed through the United States Postal Service to Miell's office address, but collected by Miell from his American Family agent's office, when the checks had been so mailed. Counts 22 and 23 charge filing of "false tax returns" for 2001 and 2002, respectively, based on failure to declare as income funds received through fraudulent means.

Trial in this case was set to begin on January 5, 2009. On January 3, 2009, Miell entered guilty pleas to Counts 1 through 20. The prosecution dismissed Count 21 and the case proceeded to trial before a jury on Counts 22 and 23. On January 12, 2009, the jury returned a verdict in which it found Miell guilty of the charges in Counts 22 and 23.

Sentencing in this case was scheduled to commence on September 2, 2009. On August 20, 2009, the prosecution filed a Motion For Upward Departure, arguing that Miell's conduct falls outside the "heartland" of U.S.S.G. § 2B1.1 and requesting that the court depart upward pursuant U.S.S.G. §§ 5K2.0, 5K2.8 and 5K2.21. On August 26, 2009, defendant Miell filed a Motion For Downward Departure, asserting, *inter alia*, that the amount of loss caused by Miell's actions was substantially less than that claimed by the prosecution.

On September 2, 2009, the sentencing hearing began. On the first day, the prosecution presented testimony from ten witnesses and Miell offered the testimony of his first witness. On the following day, September 3, 2009, Miell completed the testimony of his first witness and also presented the testimony of two other defense witnesses. The prosecution offered testimony from an expert witness, a forensic fraud examiner. At this juncture, a dispute between Miell and his counsel arose, culminating in Miell's counsel making oral motions to the court to be permitted to withdraw, which the court granted. The court continued the sentencing indefinitely to allow Miell to seek new counsel.

On November 19, 2010, Miell's new attorney, Alfredo Parrish, filed his appearance on Miell's behalf. On December 7, 2009, Miell filed an Application To Continue Sentencing Hearing in which he requested that his sentencing be continued 120 days to permit his new counsel adequate time to orient himself with the case. On December 16, 2009, following a status conference, the court granted Miell's motion and set April 19, 2010, for completion of Miell's sentencing hearing.

On March 11, 2010, Miell filed a Motion To Withdraw Guilty Pleas To Counts 1 Through 20 (docket no. 217). In his motion, Miell asserts that his guilty pleas were invalid because the court failed to advise him of the maximum possible sentence he faced, any applicable forfeiture, as well as the court's authority to order restitution. Miell also claims that his counsel did not properly prepare and advise him regarding his guilty pleas and, as a result, his counsel's ineffective assistance constitutes a fair and just reason to permit him to withdraw his guilty pleas. The prosecution filed a timely resistance to Miell's motion on March 17, 2010.

The court held a hearing on Miell's motion on March 31, 2010, at which Assistant United States Attorney C.J. Williams represented the prosecution, and Miell was present in person with his new attorney, Alfredo Parrish of Parrish Kruidenier Dunn Boles Gribble Parrish Gentry & Fisher, L.L.P., Des Moines, Iowa.

## II. ANALYSIS

### A. Standard Of Review

Federal Rule of Criminal Procedure 11(d) provides as follows:

> **(d) Withdrawing a Guilty or Nolo Contendere Plea.**
> A defendant may withdraw a plea of guilty or nolo contendere:
> > **(1)** before the court accepts the plea, for any reason or no reason; or

**(2)** after the court accepts the plea, but before it imposes sentence if:

> **(A)** the court rejects a plea agreement under Rule 11(c)(5); or

> **(B)** the defendant can show a fair and just reason for requesting the withdrawal.

FED. R. CRIM. P. 11(d).

Pursuant to Rule 11(d), before the court imposes sentence, a defendant may move to withdraw his guilty plea if there is a "fair and just reason" for doing so. *See* FED. R. CRIM. P. 11(d)(2)(B). Accordingly, defendant Miell is required to show "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir. 2009) ("'The defendant bears the burden of showing fair and just grounds for withdrawal.'") (quoting *United States v. Mugan*, 441 F.3d 622, 630-31 (8th Cir. 2006)); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008) ("After his guilty plea is accepted but before sentencing, a defendant may be permitted to withdraw the plea for 'a fair and just reason.'"); *United States v. Taylor*, 515 F.3d 845, 851 (8th Cir. 2008) ("If a defendant presents a 'fair and just reason' for the withdrawal, the defendant may withdraw a guilty plea after the court's acceptance of the plea, but before sentencing."). In addition to considering whether there is a "fair and just reason" for the defendant to be allowed to withdraw his guilty plea, "[t]he district court may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion." *Mugan*, 441 F.3d at 630; *accord Green*, 521 F.3d at 932; *United States v. Smith*, 422 F.3d 715, 721 (8th Cir. 2005); *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005). "If a defendant fails to establish a fair and just reason for withdrawing the guilty plea, the district court need not address the remaining factors." *Smith*, 422 F.3d at 724. Also,

"[g]uilty pleas should not be 'set aside lightly.'" *Id.* (quoting *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997), *cert. denied*, 522 U.S. 824 (1997)). Thus, although the "fair and just" standard is a liberal one, it does not create an automatic right to withdraw a plea. *Smith*, 422 F.3d at 723.

## B. *"Fair And Just Reason" To Withdraw The Pleas*

Miell contends that there are two "fair and just reasons" for permitting him to withdraw his guilty pleas. First, Miell asserts that the court failed to follow Federal Rule of Criminal Procedure 11(b)(1) in taking his guilty pleas. Specifically, Miell contends that the court failed to apprise him of the maximum possible sentence, did not inform him of possible forfeiture, and the court's authority to order restitution.[2] Second, Miell argues that his counsel was ineffective. The prosecution asserts that Miell is wrong on each point. The court will take up each of Miell's contentions in turn.

### 1. *Rule 11 Procedure*

Miell contends that the court violated Federal Rule of Criminal Procedure 11 by failing to inform him of "any maximum possible" penalties for the charged offenses to which he was pleading guilty, as well as did not inform him of possible forfeiture and the court's authority to order restitution. "Rule 11 requires the district court to follow certain protocol to ensure a defendant's plea is knowing, intelligent, and voluntary." *United States v. Gray*, 581 F.3d 749, 753 (8th Cir. 2009). Rule 11(b)(1) provides in relevant part:

---

[2]Although the court did not explain the possibility of forfeiture as required by Rule 11(b)(1)(J), this omission did not affect Miell's substantial rights for the obvious reason that there is no forfeiture involved in Miell's case. Accordingly, this omission was harmless error under Federal Rule of Criminal Procedure 11(h).

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

. . . .

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

. . . .

(J) any applicable forfeiture;

(K) the court's authority to order restitution.

FED. R. CRIM. P. 11(b)(1)(H), (J), and (K); *see United States v. Garcia*, No. 09-1596, at *4, 2010 WL ----- (8th Cir. May 7, 2010). Rule 11(h) provides that: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." FED. R. CRIM. P. 11(h).

### a.    *Possible maximum sentences*

At the plea hearing, the court advised defendant Miell of the maximum sentences for the charged offenses, complying with the requirements of Rule 11(b)(1)(H), telling Miell:

> THE COURT:    Okay.  Now, I also have to advise you what the maximum possible penalties are by statute.  It doesn't mean what your likely sentence is going to be.  I only have to  — because I have no idea what your likely sentence is going to be at this point.  But I have to advise

you what the maximum possible penalties are.

On Counts 1 through 18, it's up to 20 years' imprisonment without the possibility of parole; a fine of up to $250,000 on each count; and a mandatory special assessment of a hundred dollars and a period of supervised release for up to five years. Do you understand that's what the maximum penalties are on Counts 1 through 18?

THE DEFENDANT:      Yes, I do, Your Honor.

THE COURT:      Okay. And on Counts 19 and 20 the maximum term of imprisonment is up to 5 years without the possibility of parole, a fine of up to a quarter of a million dollars on each count, and you could receive both the fine and the maximum sentence on all of these charges and a —I think I said that, a fine of up to $250,000 or both and a special assessment of a hundred dollars on each count and a maximum period of supervised release of 3 years. Do you understand those are the maximum penalties?

THE DEFENDANT:      Yes, I do, Your Honor.

Plea Tr. at 12.

In his brief, Miell contends that the court's reference to "on each count" related only to the possible fine, and did not implicate Miell's possible period of imprisonment. This interpretation, however, is driven by faulty punctuation-the semi-colon separating the term of imprisonment from the possible fine, and, therefore, the court declines to read the statement in such a manner. The words used, considered in light of the court's intonation and emphasis, and not the punctuation, are the controlling here. When considered in this way, the clear meaning of the phrase "on each count" applied to not only the possible fine, but equally to the period of imprisonment, thus informing Miell that the maximum penalties he was facing included a maximum possible sentence of 20 years on each of the first 18 counts and five years on each of the perjury counts. Indeed, at the evidentiary hearing, Miell conceded that the court advised him of the maximum statutory penalty for each count.[3]

Miell also contends that the information supplied him by the court was insufficient because the court did not advise him of the maximum possible aggregate sentence if all twenty counts were run consecutively. The Eighth Circuit Court of Appeals, however, has held that the requirements of Rule 11 have been met even where the court does not specifically advise the defendant of the possibility of consecutive sentencing, because the district court "implicitly [does so]" when it informs the defendant of the maximum term of imprisonment for each count with which the defendant is charged. *See United States v. Burney,* 75 F.3d 442, 445 (8th Cir. 1996) (citing *United States v. Hamilton,* 568 F.2d

_____

[3]The court notes that it will not impose a prison sentence on defendant Miell greater than twenty years, the period of incarceration the court specifically mentioned at the change of plea hearing that it had the authority to impose for the mail fraud counts. Accordingly, any Rule 11 error due to the court's failure to apprise him of the maximum period of incarceration for each count is harmless error because this action will not affect Miell's substantive rights.

1302, 1306 (9th Cir.) (per curiam), *cert. denied,* 436 U.S. 944 (1978), as holding that a court's warning that a defendant was subject to a possible 15-year sentence as to each of two counts "implicitly" alerted the defendant to the possibility of consecutive sentencing); *see also United States v. General,* 278 F.3d 389, 395 (4th Cir.) ("Rule 11, however, does not require a district court to inform the defendant of mandatory consecutive sentencing."), *cert. denied,* 122 S. Ct. 2643 (2002); *United States v. Morgan-Garcia*, 69 F.3d 535 (5th Cir. 1995) (unpublished table opinion) ("Rule 11 of the Federal Rules of Criminal Procedure does not require the district court to advise defendants that they may receive consecutive sentences."); *United States v. Ospina,* 18 F.3d 1332, 1334 (6th Cir. 1994) (no requirement to tell defendant about mandatory consecutive sentences); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) ("The trial court need not inform the defendant that the sentences to each count may run consecutively."); *Faulisi v. Daggett,* 527 F.2d 305, 309 (7th Cir. 1975) (no requirement to tell defendant that federal sentence may, at district court's discretion, run consecutively to state sentence); *Wall v. United States,* 500 F.2d 38, 39 (10th Cir. 1974) (no requirement to tell defendant about possible consecutive sentences); *Paradiso v. United States,* 482 F.2d 409, 415 (3rd Cir. 1973) (no requirement to inform defendant that multiple sentences might, at discretion of district court, be served consecutively).

Notwithstanding this line of authority, defendant Miell argues that these decisions do not constitute controlling precedent as a result of Rule 11's amendment in 2002.[4] The

---

[4] Prior to its 2002 amendment, Rule 11(c)(1) of the Federal Rules of Criminal Procedure provided, in part, as follows:

> (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant

(continued…)

history of this amendment, as well as the text of the amendment's actual change to Rule 11, do not support Miell's contention. As the comments to Rule 11's 2002 amendment make clear:

> The language of Rule 11 has been amended and reorganized as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.

FED. R. CRIM. P. 11 (comments to 2002 Amendments). With respect to the maximum penalties provision, Rule 11 was expanded "to include advice as to the maximum or minimum term of imprisonment, forfeiture, fine, and special assessment, in addition to the two types of maximum penalties presently enumerated: restitution and supervised release." *Id.* Thus, it is clear that the 2002 amendment to Rule 11's maximum penalties provision was not intended to mark a categorical change in the information that had to be provided a defendant regarding the maximum term of imprisonment but was instead designed to ensure that a defendant was aware that the maximum penalty included not only imprisonment, but forfeiture, fine, and special assessment. The court, therefore, concludes that the fact that Miell was not advised of the maximum possible aggregate

---

[4](…continued)

> personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special or supervised release term . . .

FED. R. CRIM. P. 11(c)(1) (2000).

sentence he faced if all twenty counts were run consecutively does not constitute a violation of Rule 11.[5]

Alternatively, the court concludes that because the record discloses that Miell actually knew about the possibility of receiving consecutive sentences, any error in the court's failure to apprise him of its authority to impose consecutive sentences is harmless error under Rule 11(h). *See United States v. Young*, 927 F.2d 1060, 1062 (8th Cir.) (holding that where defendant actually knew the statutory maximum and minimum sentences to which he was subject, the district court's violation of Rule 11 was harmless error), *cert. denied*, 502 U.S. 943 (1991); *see also United States v. Johnson*, 1 F.3d 296, 303 (5th Cir. 1993) (finding harmless error where defendant knew of mandatory minimum despite the court's failure to mention it during Rule 11 colloquy). In this case, evidence in the record demonstrates that Miell was aware by the time of his guilty pleas that the court had the authority to impose consecutive sentences. First, in his civil case with American Family, on March 4, 2008, American Family filed a brief, in response to Miell's Motion For Judgment As A Matter of Law And/Or To Alter Or Amend The Judgment, which explicitly pointed to the possible criminal penalties Miell faced for his fraudulent actions, including the possibility that the criminal sentences could be run consecutively:

> So, counting only the 145 claims at the core of this lawsuit, it appears that Nau mailed sixty different envelopes carrying replacement cost checks to Miell. Those mailings of replacement cost checks were an integral part of Miell's fraudulent scheme—in fact, those mailings were the *goal* of the

---

[5]Although not required by Rule 11, the court agrees that it is a better practice to inform the defendant of the possibility of consecutive sentences and the maximum possible aggregate sentence if all sentences are run consecutive, and the court intends to employ such a practice in all future change of plea hearings.

> scheme. Therefore, Miell could be subject to up to sixty charges under 18 U.S.C. section 1341.
>
> For each of those sixty charges, Miell could be imprisoned up to "20 years," for a total possible prison sentence of 1200 years. 18 U.S.C. § 1341. In addition, for each of those sixty charges, Miell could be fined. *See id.* Arguably, those fines could be as high as $250,000 for each of he sixty mail fraud counts, *see* 18 U.S.C. § 3571(b)(3), for a total federal fine of $15,000,000.
>
> Summarizing, as a result of his insurance fraud scheme against American Family, Miell could be subject to 1200 years in federal prison. . .added to the enormous potential federal liability of $15,000,000. . .

American Family Br. at 40-41, *American Family Mut. Ins. Co.*, C04-0142-JSS (docket no. 182); Gov't Ex.1, *United States v. Miell*, CR07-101-MWB (docket no. 219-1). Second, and more specifically, Miell's former attorney, Brown, specifically discussed with Miell the possibility of receiving consecutive sentences. Therefore, because Miell actually knew about the possibility that the court could impose consecutive sentences, any Rule 11 error due to the court's failure to apprise him of its authority to impose consecutive sentences is harmless error because such action did not affect Miell's substantive rights.

Finally, because the court does not intend to, and will not, impose a prison sentence on defendant Miell greater than twenty years, the period of incarceration the court specifically mentioned at the change of plea hearing that it had the authority to impose for each of the 18 mail fraud counts, the court's failure to inform Miell about the court's authority to order consecutive sentences does not affect his substantial rights. Accordingly, the fact that the court did not advise Miell about its authority to impose consecutive sentences does not constitute a fair and just reason to withdraw his guilty pleas in this case.

### b.    *Authority to order restitution*

Defendant Miell next contends that the court violated Rule 11(b)(1)(K) by failing to advise him of "the court's authority to order restitution." In this case, the Presentence Investigation Report has recommended that Miell pay restitution in the amount of $840,017.55. PSIR at ¶ 173-75. The court, however, did not inform Miell about this possibility at his change of pleas hearing. Because the court erred by failing to inform Miell of the possibility of restitution, the next issue is whether or not this error affected his substantial rights. *See* FED. R. CRIM. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). Although Rule 11(b)(1)(K) requires the court to explain a defendant's liability for both fines and restitution, federal circuit courts of appeals, including the Eighth Circuit Court of Appeals, have held a defendant is not prejudiced so long as the defendant's liability does not exceed the maximum amount that the court informed him could be imposed as a fine. *See United States v. Molzen*, 382 F.3d 805, 807 (8th Cir. 2004) ("'Although Federal Rule of Criminal Procedure 11(c) requires the district court to explain a defendant's liability for both fines and restitution, we hold that failure to do so does not impact a defendant's substantial rights where he was warned of a potential fine larger than the actual amount of restitution ordered.'") (quoting *United States v. Morris*, 286 F.3d 1291, 1294 (11th Cir. 2002)); *see also United States v. Glinsey,* 209 F.3d 386, 395 (5th Cir. 2000) (holding that a defendant "'is not prejudiced so long as his liability does not exceed the maximum amount that the court informed him could be imposed as a fine.'"); *United States v. Raineri,* 42 F.3d 36, 42 (1st Cir. 1994) (holding that error is harmless where defendant is required to pay restitution in an amount less than the potential fine he was warned about); *United States v. Gabriele,* 24 F.3d 68, 71 (10th Cir. 1994) (holding that defendant's substantial rights not impaired when ordered to pay $100,000 in restitution

when he knew he could be fined up to $750,000); *United States v. Fox,* 941 F.2d 480, 484-85 (7th Cir. 1991) (holding that decision to plead guilty not prejudiced by court's failure to advise of possibility of restitution when defendant had notice of a possibly greater fine); *United States v. Miller,* 900 F.2d 919, 921 (6th Cir. 1990) (holding that error was harmless where defendant was required to pay restitution in an amount less than the maximum possible fine amount of which he had knowledge); *United States v. Fentress,* 792 F.2d 461, 466 (4th Cir. 1986) (holding defendant was not prejudiced by the imposition of $38,000 restitution order when defendant might have been ordered to pay a maximum fine of $40,000). The simple logic underlying this line of authorities is that "[i]t is the amount of liability, rather than the label 'restitution,' that affects [a defendant's] substantial rights." *Glinsey,* 209 F.3d at 395. Here, the court advised Miell that he faced a maximum possible fine of $5,000,000. Because the court does not intend to, and will not, impose liability on defendant Miell for fines and restitution greater than the $5,000,000 the court informed him could be imposed as a fine, the court's failure to inform Miell about the court's authority to order restitution does not affect his substantial rights. Accordingly, it does not constitute a fair and just reason to withdraw his guilty pleas in this case.

Alternatively, the court concludes that because Miell actually knew about the possibility of the court ordering restitution in this case prior to his guilty pleas, the court's failure to apprise him of its authority to impose restitution is harmless error under Rule 11(h). *See Young*, 927 F.2d at 1062; *see also Johnson*, 1 F.3d at 303. In this case, ample evidence in the record shows that Miell was aware, by the time of his guilty pleas, that the court had the authority to impose restitution. First, Miell's attorney, Brown, specifically discussed the topic of restitution with Miell. From these conversations with Brown, Miell was aware that the prosecution's expert had estimated the potential restitution in his case

at approximately $1,200,000. Second, the proposed plea agreement Miell's counsel obtained from the prosecution included the following specific provisions regarding restitution.

> 10.\_\_\_\_\_ The defendant agrees to pay full restitution to all identifiable victims of the fraud schemes to which he is pleading guilty. The defendant further understands that the amount of loss sustained by each victim will be determined during the course preparation of the presentence investigation report. The defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. The defendant understands that full restitution will be ordered regardless of the defendant's financial resources. The defendant agrees that any restitution imposed will be non-dischargeable by any bankruptcy proceeding and he will not seek a discharge or a finding of dischargeability as to the restitution obligation. The defendant agrees to make restitution to all victims of the mail fraud schemes to which he has pled guilty and his obligation to make restitution is not limited to the specific counts of conviction reflecting individual mailings made in relation to the underlying fraudulent schemes.

> 11.\_\_\_\_ In furtherance of defendant's obligation to cooperate in compensating victims of his crimes, with respect to the mail fraud scheme involving insurance payments, the defendant will, no later than the time of sentencing, pay to American Family Insurance Company $336,541.26, representing the amount of RCV payments defendant wrongly received.

Proposed Plea Agreement at ¶¶ 10-11; Gov't Ex. 2. Thus, due to the specific information he received from his counsel, as well as the plea negotiations with the prosecution, Miell was fully aware of the possibility that the court could order him to pay restitution in this case. Accordingly, since Miell actually knew about the possibility that the court could

impose restitution, the court's error in failing to apprise him of its authority to order restitution is harmless error because it did not affect Miell's substantive rights.

### 2. *Ineffective Assistance of Counsel*

Miell also contends that he should be permitted to withdraw his guilty pleas because he was provided ineffective assistance of counsel. In his brief, Miell contends that his counsel were ineffective because they did not adequately prepare for trial, did not subpoena witnesses, and hurried him into a guilty plea. At the evidentiary hearing, Miell advanced a new assertion, that his counsel were ineffective, during the plea hearing, because they failed to alert the court to the fact that it had not advised Miell of its authority to order restitution as well as the maximum possible aggregate sentence he faced if all twenty counts were run consecutively. Before addressing the merits of these claims, the court must first review the applicable standards governing a claim of ineffective assistance of counsel.

### a. *Applicable standards*

The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. However, assistance of counsel does not have to be perfect or free from error. *McMann v. Richardson,* 397 U.S. 759, 774 (1970). Rather, "the right to counsel is the right to the *effective* assistance of counsel." *Id.* at 771 n.14 (emphasis added). Conversely, ineffective assistance of counsel occurs when a trial counsel's performance falls below that of a "reasonably competent attorney." *Id.* at 770-71.

To establish ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) that such failure prejudiced him in that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687-88 & 694 (1984); *Padilla v. Kentucky*, No. 08-651, 2010 WL 1222274, at *7 (Marc. 31, 2010) (noting that Under *Strickland,* we first determine whether counsel's representation "fell below an objective standard of reasonableness." Then we ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (citations omitted) (quoting *Strickland,* 466 U.S. at 668, 694); *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) ("'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'") (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland*, 466 U.S. at 687); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]"). The Supreme Court held in *Hill v. Lockhart,* 474 U.S. 52 (1985), that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill,* 474 U.S. at 58-59.

The "deficient performance" prong requires the defendant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of

reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). However, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. As a result, there are two substantial impediments to making a sufficient showing of deficient performance. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the defendant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the defendant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the defendant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423

F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). In *Hill*, the Court held that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59; *see United States v. Jones*, 479 F.3d 975, 978 (8th Cir. 2007) (quoting *Hill*, 474 U.S. at 59); *United States v. McMullen*, 86 F.3d 135, 137 (8th Cir. 1996) (same). Thus, under the *Hill* standard, the question is whether counsel's error affected the defendant's decision to plead guilty or go to trial. Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

### b. *Ripeness*

Before addressing the merits of Miell's claims of ineffective assistance of counsel, the court must first briefly address whether this aspect of his motion is "ripe" for determination. As this court pointed out in *United States v. Marcos-Quiroga*, 478 F. Supp.2d 1114, (N.D. Iowa 2007),

> Although ineffective assistance of counsel may constitute a ground to withdraw a defendant's guilty plea, *Hill,* 474 U.S. at 58-59, 106 S. Ct. 366, such claims are "usually best litigated in collateral proceedings" when the record can be more fully developed. *Ramirez-Hernandez,* 449 F.3d at 826-27 (declining to consider on direct appeal the defendant's contention that he should have been allowed to withdraw his guilty plea owing to ineffective assistance of counsel); *see also Davis,* 452 F.3d at 994 (finding the record "not developed at all," so that the court deferred to § 2255 proceedings

consideration of whether ineffective assistance of counsel justified withdrawal of a guilty plea); *United States v. Mugan,* 441 F.3d 622, 631 (8th Cir. 2006) (where no factual record had been developed to support a defendant's contention of ineffective assistance of counsel as a fair and just reason to withdraw his guilty plea, such a claim was "best reviewed in collateral proceedings"). On the other hand, an ineffective-assistance claim will be considered on direct appeal, and presumably, could be considered by the district court on a motion to withdraw a guilty plea, "where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *Id.* at 827 (citing *United States v. Cook,* 356 F.3d 913, 919-20 (8th Cir. 2004), and opining that "[a] properly developed record for purposes of determining a claim of ineffective assistance of counsel [as grounds to withdraw a guilty plea] would include cross-examination by [the defendant] of his counsel on the question of what advice counsel gave him"); *see also Cook,* 356 F.3d at 919-20 (adding to the list of circumstances in which it is proper to consider an ineffective-assistance claim without waiting for collateral review those situations in which counsel's performance was "obviously deficient").

*Id.* at 1130-31.

Here, the court finds that this is not a case in which Miell's ineffective-assistance claim must wait for collateral proceedings pursuant to § 2255, although that may be the procedural footing in which such claims are "usually best litigated." *See United States v. Davis*, 583 F.3d 1081, 1091 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 1555 (2010); *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826-27 (8th Cir. 2006). This is because the pertinent record is fully developed following the court's evidentiary hearing. *Compare Davis*, 452 F.3d at 994 (the record was "not developed at all," so that later consideration of the claim pursuant to a § 2255 motion was appropriate); *Mugan*, 441 F.3d at 631 (where

no factual record had been developed to support the claim, the claim was "best reviewed in collateral proceedings"), *with Davis*, 583 F.3d at 1091 (finding that record was sufficiently developed by hearing at which defendant's former counsel testified); *Ramirez-Hernandez*, 449 F.3d at 827 (recognizing, at least in theory, that an ineffective-assistance claim would be ripe for consideration on direct appeal "where the record has been fully developed"); *Cook*, 356 F.3d at 919-20 (same). Therefore, the court finds that Miell's motion to withdraw his guilty plea based on the ineffective assistance of counsel is "ripe" for consideration now.

### c.    *Analysis*

As discussed above, to show ineffective assistance of counsel, Miell must establish both that counsel's performance was deficient and that it prejudiced him. *Strickland*, 466 U.S. at 687-88 & 694. The court will consider the prongs of the *Strickland* analysis in turn.

### i. *Deficient performance*

As mentioned above, defendant Miell contends that his counsel were ineffective because they did not adequately prepare for trial, did not subpoena witnesses, hurried him into a guilty plea, and, at the change of plea hearing, failed to alert the court of possible violations of Rule 11. The court will take up each of these assertions in turn.

First, while Miell vaguely claims that counsel did not adequately prepare for trial, nothing in the record suggests that counsels' investigation or preparation for trial fell below a reasonable range of competency. To the contrary, Brown alone spent between 75 and 150 hours preparing for trial. Brown reviewed the prosecution's discovery file on numerous occasions. He, along with private investigator McDonald, conducted interviews of potential witnesses and, based on Brown's knowledge and experience, as well as information gained from the interviews of possible witnesses, ultimately, identified

between eight and twelve witnesses for trial. Brown then had subpoenas prepared for these witnesses. Brown also prepared approximately 200 exhibits for trial and reviewed the prosecution's proposed exhibits. In addition, Brown prepared jury instructions for trial on all counts and filed objections to the prosecution's proposed instructions. Moreover, Brown prepared and filed two motions in limine on Miell's behalf. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Strickland,* 466 U.S. at 689-90, and it is clear from the record before the court that Miell's counsels' investigation and preparation was not deficient.

Likewise, Miell has not demonstrated that his counsel performed deficiently in failing to subpoena witnesses immediately. Brown's decision to refrain from subpoenaing witnesses was not an act of negligence but a conscious, reasonably informed strategic decision based on the unique factual circumstances of the case. Brown had multiple reasons for not serving the subpoenas immediately. First, several of the witnesses were Miell's employees who were willing to testify on his behalf and Brown did not anticipate having any trouble serving them. Second, Brown anticipated the trial lasting between ten and fifteen days and wanted to see how fast the trial was proceeding before deciding when to subpoena his witnesses. Finally, he anticipated that some of the witnesses he intended to call would be called by the prosecution in its case-in-chief, thereby eliminating any need for Brown to subpoena them for the defense. Examining this decision with a "heavy deference to counsel's judgment," *Strickland,* 466 U.S. at 691, the court concludes that Miell's counsels' failure to immediately serve certain witness subpoenas did not constitute deficient performance.

Turning next to Miell's claim that his counsel were ineffective because they rushed him into pleading guilty, the court finds this assertion completely unsupported in the

record. At his change of plea hearing, Miell assured the court that he had all of the time necessary to decide whether or not to plead guilty:

> THE COURT: And have you had a full, fair, and complete opportunity to discuss with Mr. Kutmus and Mr. Brown your decision on whether to go to trial on all of the counts or whether to plead guilty on Counts 1 through 18 and go to trial on the tax counts? I mean, have you had all the time you feel is necessary to discuss all of the various options and weigh what you and your lawyers think are in your best interest?
>
> THE DEFENDANT: Yes, I have, Your Honor.

Plea. Tr. at 25.

In addition, later in the plea hearing, Miell specifically assured the court that he had not been pressured, forced, or coerced into pleading guilty:

> THE COURT: Has anybody pressured you or threatened you or forced you or coerced you in any way to try and get you to plead guilty?
>
> THE DEFENDANT: No, sir.

Plea. Tr. at 33.

Miell's claim is further undermined by Brown's testimony, which the court finds to be credible, that at no time during his multi-hour trip with Miell, from Des Moines to Sioux City for his change of plea hearing, did Miell tell Brown that he did not wish to plead guilty. Finally, the court notes that Miell presented no evidence at the evidentiary

hearing which would support his claim that he was pressured by his counsel into pleading guilty and, thus, his counsel were not ineffective in this regard. Accordingly, the court finds that Miell has not established that he was pressured into pleading guilty by his counsel. This leaves Miell's claim that his counsel was ineffective because they failed to alert the court to the fact that it had not advised Miell of its authority to order restitution as well as the maximum possible aggregate sentence he faced if all twenty counts were run consecutively.

For the reasons discussed above, because Rule 11 does not require the court to advise a defendant that the defendant may receive consecutive sentences, *see Burney*, 75 F.3d at 445; *see also Hamilton*, 568 F.2d at 1306; *General,* 278 F.3d at 395; *Ospina*, 18 F.3d at 1334, Miell's counsels' failure to notify the court during the change of plea hearing that it had not advised Miell of the maximum possible aggregate sentence he faced if all twenty counts were run consecutively did not constitute deficient performance. However, because Rule 11(b)(1)(K) clearly required the court to advise Miell of "the court's authority to order restitution," his counsels' failure to alert the court that this had not been done during Miell's change of plea hearing constituted deficient performance. Thus, Miell has satisfied the first prong of the *Strickland* analysis of his ineffective-assistance claim based on his counsels' failure to notify the court that it had not advised Miell of its authority to order restitution.

### ii. Prejudice

Because the court finds that Miell has satisfied the "deficient performance" prong of his ineffective-assistance claim, the court turns to consider whether or not he can satisfy the "prejudice" prong. *See Strickland*, 466 U.S. at 687-88 & 694 (ineffective-assistance claims require proof of both "deficient performance" and "prejudice"). As discussed above, under the Supreme Court's decision in *Hill*, 474 U.S. 52, in order to make the

necessary showing of "prejudice" to support withdrawal of a guilty plea based on ineffective assistance of counsel, a defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The court finds that Miell cannot establish that but for his counsels' failure to alert the court, during the plea hearing, that it had failed to advise Miell of its authority to order restitution, he would not have pleaded guilty. Miell has offered absolutely no evidence that this deficiency in his counsels' performance affected his decision to plead guilty. Moreover, the record completely undercuts any such assertion. First, during Brown and Miell's discussions concerning the pros and cons of Miell pleading guilty, which occurred during the summer of 2008, Brown discussed the topic of restitution with Miell. From these conversations, Miell was aware that the prosecution's expert had estimated the potential restitution in his case at approximately $1,200,000. Miell's knowledge of the possibility that he could be ordered to pay restitution was subsequently reenforced by the prosecution's proposed plea agreement which included several specific provisions regarding victim restitution. Despite his knowledge regarding the possibility of restitution in his case, Miell, nonetheless, agreed to enter a guilty plea. It follows from this, that if the court had informed Miell of its authority to order restitution, such a disclosure would hardly have come as a surprise to Miell, and surely would not have affected his decision to plead guilty.[6]

_____

[6]Moreover, Miell knowingly and voluntarily entered his guilty pleas knowing he faced a maximum possible fine of $5,000,000, a sum dwarfing the possible restitution of $840,017.55. Thus, Miell clearly knew that there were possible severe financial consequences resulting from his pleading guilty. Miell has offered no evidence, whatsoever, that if he had been informed about the court's authority to order restitution, in addition to the fines, it would have somehow tipped the scales against him pleading guilty.

Accordingly, the court concludes that Miell has not established that he was "prejudiced" under the *Hill* standard, because Miell has failed to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, Miell has not established both the "deficient performance" and "prejudice" prongs of his claim of ineffective assistance of counsel, as the two-prong analysis is formulated in *Strickland* and *Hill*. Therefore, the court finds that defendant Miell has not established a "fair and just reason" for withdrawal of his guilty pleas here.

### C. Other Factors

Where a defendant has established a fair and just reason for withdrawal of a guilty plea, the court must also consider "'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *Ramirez-Hernandez*, 449 F.3d at 826 (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). However, because defendant Miell has not established a "fair and just reason" for withdrawal of his guilty pleas, there is no need for the court to examine the other factors. *United States v. Murphy*, 572 F.3d 563, 568 (8th Cir. 2009) ("'[I]f a defendant does not present a fair and just reason for withdrawal of a guilty plea no need exists to examine the other factors.'") (quoting *Gray*, 152 F.3d at 819); *United States v. Teeter*, 561 F.3d 768, 770 (8th Cir. 2009) ("If a defendant fails to show a fair and just reason for withdrawing his plea, however, a district court need not address the remaining considerations."); *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007) ("If the defendant fails to show a fair and just reason for withdrawing his plea, the district court does not need to address any additional factors."); *Smith*, 422 F.3d at 724 ("If a defendant

fails to establish a fair and just reason for withdrawing the guilty plea, the district court need not address the remaining factors."); *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005) ("If a defendant fails to establish a fair and just reason for withdrawing a guilty plea, the district court need not address the remaining factors. "); *United States v. Abdullah*, 947 F.2d 306, 311 (8th Cir. 1991) (holding that if the defendant fails to present a fair and just reason for withdrawal of a guilty plea, "no need exists" for the district court to examine the other factors). Even though it is unnecessary to consider the other factors for determining whether Miell should be allowed to withdraw his guilty pleas, the court will briefly address the issues of defendant's innocence, the timing of his motion, and whether the prosecution will be prejudiced.

### 1. *Innocence*

The court notes that Miell makes a bare assertion of innocence in his brief. A defendant, who makes a motion to withdraw a guilty plea on the basis of actual innocence, bears the burden of producing evidence to support his or her claim of innocence. *United States v. Ludwig,* 972 F.2d 948, 950 (8th Cir. 1992). Miell has not provided the court with any evidence which would support his assertion of innocence. To the contrary, Miell acknowledged, at the change of plea hearing, that the prosecution could prove facts sufficient to support each of the mail fraud and perjury counts of the indictment to which he was pleading guilty. Miell does not disavow those admissions. As the Eighth Circuit Court of Appeals has recognized, "claims of innocence carry little weight in the face of contrary testimony under oath at a change of plea hearing." *United States v. Storholm,* 226 F. App'x 639, 640 (8th Cir. 2007) (citing *United States v. Peebles,* 80 F.3d 278, 279 (8th Cir. 1996) (per curiam) ("Furthermore, we agree with the District Court that [defendant]'s claims of innocence are unavailing, given his admissions to the contrary in the plea agreement and stipulation[.]")); *see United States v. Hodges,* 259 F.3d 655, 661 (7th Cir.

2001) (holding that naked claims of innocence are insufficient to mandate withdrawal of a guilty plea). Therefore, the court finds that Miell has not substantiated his claim to innocence. *See Ludwig,* 972 F.2d at 951 (noting that a defendant who fails to present evidence to support his or her claim of innocence cannot overturn a denial of motion to withdraw a guilty plea on innocence grounds).

### 2. Time Between Guilty Pleas and Motion To Withdraw

The next factor the court will examine in determining whether to set aside Miell's guilty pleas is the length of time between his guilty pleas and his motion to withdraw. *See Davis*, 583 F.3d at 1081; *Murphy*, 572 F.3d at 568; *Maxwell*, 498 F.3d at 801; *Ramirez-Hernandez*, 449 F.3d at 826; *United States v. Embrey*, 250 F.3d 1181, 1183 (8th Cir. 2001), *cert. denied*, 123 S. Ct. 1642 (2003). Miell's change of plea hearing was held on January 3, 2009. On November 17, 2009, the first disclosure of the Second Draft Copy of the Presentence Investigation Report ("PSIR") was submitted to the court and parties. On February 22, 2010, the court rescheduled the commencement of Miell's sentencing to April 19, 2010. On March 11, 2010, Miell filed his motion to withdraw his guilty pleas.

The court finds that the fourteen-month period between the time Miell entered his guilty plea and the time he filed his current motion is indicative of belated misgivings he has about the wisdom of his decision to plead guilty. *See United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) ("'The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom.'") (quoting *United States v. Fitzhugh,* 78 F.3d 1326, 1328 (8th Cir.), *cert. denied,* 519 U.S. 902 (1996); *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992) ("'The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom.'") (quoting *United States v. Woosley,* 440 F.2d 1280, 1281 (8th Cir. 1971)). Considering the timing of Miell's motion, the court finds that this factor weighs against Miell due to the fact he filed his

motion approximately one-month prior to the continuation of this sentencing scheduled to commence. *See United States v. Stuttley,* 103 F.3d 684, 686 (8th Cir. 1996) ("Post-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea . . . ."). Moreover, the court notes that substantially shorter delays in bringing a motion to withdraw guilty plea have been found to weigh against granting such a motion. *See* Jones, 479 F.3d at 978 (seven months); *United States v. Prior*, 107 F.3d 654, 658 (8th Cir. 1997) (dicta indicating that five month delay would weigh against granting motion to withdraw guilty plea); *United States v. Valley*, 108 F.3d 155, 158 (8th Cir. 1997) (four months). Accordingly, the court finds that this factor also weighs against setting aside Miell's guilty plea.

### 3.    *Prejudice to the prosecution*

The final factor the court will examine in determining whether to set aside Miell's guilty pleas is whether the prosecution would be prejudiced in allowing Miell to withdraw his guilty pleas. *See Davis*, 583 F.3d at 1081; *Murphy*, 572 F.3d at 568; *Maxwell*, 498 F.3d at 801; *Ramirez-Hernandez*, 449 F.3d at 826; *Embrey,* 250 F.3d at 1183. Miell asserts that no prejudice to the prosecution would occur if the court were to allow him to withdraw his pleas. In response, in its brief, the prosecution asserts it has expended considerable resources to prepare for trial, including spending hundreds of hours in trial preparation and subpoenaing their 52 witnesses. The prosecution further contends that if Miell is permitted to withdraw his plea, the prosecution will have to duplicate its prior efforts. Morever, the prosecution asserts that because of the substantial passage of time since Miell's guilty pleas, the memories of its witnesses will have faded, requiring the prosecution to expend more time than usual in preparing their witnesses for trial. The prosecution also claims that it has lost track of most of its witnesses and would have to

expend considerable time relocating its witnesses and serving them with subpoenas a second time. Although some degree of prejudice to the prosecution is, of course, inevitable from a plea withdrawal, here, however, the court concludes that the prejudice to the prosecution would be substantial given the complexity of this case. *United States v. Durham,* 178 F.3d 796, 799 (6th Cir. 1999) (noting that "forcing the government to prepare its case once again would prejudice the government"). Accordingly, the court finds that the prejudice to the prosecution of expending the time and cost in preparing for Miell's trial further weighs against allowing Miell to withdraw his guilty pleas.

## *III. CONCLUSION*

After considering the evidence presented, the arguments of counsel, and reviewing the record, the court finds that defendant Miell has failed to demonstrate a fair and just reason to withdraw his guilty pleas. Therefore, defendant Miell's Motion To Withdraw Guilty Pleas To Counts 1 Through 20 (docket no. 217) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 10th day of May, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA