**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT MIELL, <br><br> Defendant. | No. CR 07-101-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING RESTITUTION** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Factual And Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Restitution Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A.  Authority To Order Restitution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B.  Determination Of Restitution Amounts* . . . . . . . . . . . . . . . . . . . . . . 9
      *1.  Restitution for the mail fraud counts* . . . . . . . . . . . . . . . . . . 9
      *2.  Restitution for the perjury counts* . . . . . . . . . . . . . . . . . . . . 13
      *3.  "Restitution" for the tax counts* . . . . . . . . . . . . . . . . . . . . . 14
   *C.  Payment Schedule* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In a detailed Memorandum Opinion And Order Regarding Sentencing, entered September 27, 2010, I sentenced the defendant, the owner of hundreds of rental properties in Cedar Rapids and Linn County, Iowa, who engaged in separate fraud schemes to defraud renters out of their damage deposits and his property insurer out of insurance payments for roof repairs from a massive hail storm, to 240 months of imprisonment on eighteen counts of mail fraud, two counts of perjury, and two counts of filing false tax returns. I now address the outstanding questions of restitution on the mail fraud and tax counts.

## I. INTRODUCTION

### A. Factual And Procedural Background

I discussed the factual and procedural background to this case extensively in my September 27, 2010, Memorandum Opinion And Order Regarding Sentencing (docket no. 311). I will not repeat that full recitation here. Rather, suffice it to say that defendant Robert Miell owned hundreds of rental properties in Cedar Rapids and Linn County, Iowa, and, consequently, was himself worth many millions of dollars. Nevertheless, he engaged in a fraud scheme involving renters' damage deposits over many years to "squeeze" an extra few hundred dollars each from people that he thought were too economically vulnerable or unsophisticated to contest his claims. His damage deposit fraud scheme involved creation of fake and inflated invoices for repairs to and cleaning of his rental properties to justify claims and judgments against renters' damage deposits. He also engaged in another fraud scheme to obtain insurance payments for repair of hail damage to the roofs of more than a hundred of his rental properties based on fake or inflated invoices, whether or not the roofs in question had actually been repaired. He engaged in perjury in civil litigation brought by his insurer, American Family Insurance (AFI), and

filed false tax returns for 2001 and 2002 that failed to declare the fraudulently obtained insurance proceeds as income.

Somewhat more specifically, in a Third Superseding Indictment (docket no. 72) handed down October 21, 2008, **Counts 1** through **18** charged Miell with "mail fraud" allegedly arising from the insurance fraud scheme (**Counts 1** through **6**)[1] and the damage deposit fraud schemes (**Counts 7** through **18**);[2] **Counts 19** through **21** charged Miell with "perjury";[3] and **Counts 22** and **23** charged Miell with "filing false tax returns."[4] Miell

---

[1] **Counts 1** through **6**, which allegedly arose from the "insurance fraud scheme," charged that, for the purpose of executing and attempting to execute the insurance fraud scheme and to obtain money by means of false and fraudulent pretenses and representations, Miell knowingly caused six items or sets of items—checks from AFI—to be delivered by the United States Postal Service according to the directions thereon, all in violation of 18 U.S.C. § 1341

[2] **Counts 7** through **18**, which allegedly arose from a "damage deposit fraud scheme," charged that, for the purpose of executing and attempting to execute the damage deposit fraud scheme, Miell knowingly caused eleven items—damage deposit notice to former tenants—to be placed in an authorized depository for mail matter and to be sent and delivered by the United States Postal Service according to directions thereon, all in violation of 18 U.S.C. § 1341.

[3] **Count 19** charged "perjury in deposition," based on an allegedly false statement by Miell in a deposition on April 26, 2006, in AFI's civil case to the effect that Miell had not signed the name "J.J. McManus" to a billing invoice, when he had done so, all in violation of 18 U.S.C. § 1621. **Count 20** charged "perjury before the court," based on allegedly false testimony by Miell, on or about January 8, 2008, in the trial of a civil action, to the effect that Miell had power of attorney to sign J.J. McManus's name, when he did not have such power of attorney, all in violation of 18 U.S.C. § 1623. **Count 21** also charged "perjury before the court," based on allegedly false testimony by Miell, on or about January 8 or 9, 2008, also in the trial of AFI's civil case, that checks from AFI for replacement cost value were not mailed through the United States Postal Service to Miell's office address, but collected by Miell from his AFI agent's office, when the checks

(continued…)

pleaded guilty to the eighteen counts of mail fraud arising from his fraud schemes and to two of the three counts of perjury.[5] He was convicted by a jury of the two counts of filing false tax returns.

After episodic sentencing proceedings on September 2 and 3, 2009, and August 17 and 18, 2010, I entered my Memorandum Opinion And Order Regarding Sentencing (docket no. 311) on September 27, 2010. In that ruling, I overruled all of Miell's objections to the Second Final And Amended Presentence Investigation Report (Final PSIR) (docket no. 291). In pertinent part, I found that the amount of loss to AFI from the insurance fraud scheme, for sentencing purposes, relevant to the mail fraud offenses in **Counts 1** through **6**, was $336,541.26, resulting in a 12-level upward adjustment to the offense level for those offenses for loss in excess of $200,000; that the amount of loss to renters from the damage deposit fraud scheme, relevant to the mail fraud offenses in **Counts 7** through **18**, exceeded $1 million, resulting in a 16-level upward adjustment to the offense level for those offenses; and that the tax loss for the tax offenses in **Counts 22**

---

[3](…continued)
had been mailed to Miell's office address, all in violation of 18 U.S.C. § 1623.

[4]**Counts 22** and **23** charged Miell with filing "false tax returns." **Count 22** charged Miell with willfully filing a false tax return for calendar year 2001, based on failure to declare as income funds received from AFI, when in truth, and as Miell then and there well knew and believed, he had obtained those funds through fraudulent means and they were not used for their intended purpose and, therefore, constituted taxable income, all in violation of 26 U.S.C. § 7206(1). **Count 23** charged Miell with willfully filing a false tax return for calendar year 2002, based on failure to declare as income funds received from AFI, when in truth, and as Miell then and there well knew and believed, he obtained those funds through fraudulent means and they were not used for their intended purpose and, therefore, constituted taxable income, all in violation of 26 U.S.C. § 7206(1).

[5]The prosecution dismissed the third perjury count upon the defendant's guilty plea.

and **23**, which determined the base offense level for those offenses, was $94,080 (based on failure to report income of just over $336,000, at a tax rate of 28%). I determined that the advisory sentencing guidelines range for Miell's offenses was 168 to 210 months, denied Miell's motion for a downward departure, and denied the prosecution's motion for an upward departure as moot, in light of my determination that an upward variance was appropriate, upon consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a). Specifically, I determined that an upward variance to the statutory maximum sentence of 240 months for the mail fraud offenses was warranted, particularly in light of the circumstances of the damage deposit fraud scheme. As I noted repeatedly in that ruling, restitution was left for determination in a separate ruling. That same day, September 27, 2010, I held the completion of Miell's sentencing hearing at which I imposed a sentence of 240 months of imprisonment, with certain other terms and conditions as set forth on the record.

The restitution claims against Miell remained unresolved. I turn to their disposition now.

### B. *Restitution Claims*

Restitution regarding the damage deposit fraud scheme had been the subject of extensive, separate proceedings in this case before United States Magistrate Judge Jon S. Scoles. On August 23, 2010, however, the prosecution filed a Notice Regarding Restitution Claims (docket no. 304), stating that the parties had reached an agreement pursuant to which Miell agreed to entry of a judgment of restitution as part of the criminal judgment in this case with respect to all 140 claims made by former tenants who had been identified as victims for purposes of **Counts 7** through **18** of the Indictment, the mail fraud counts arising from the damage deposit fraud scheme, obviating the need to hear the claims

5

of 79 former tenants. I was eventually provided with a spreadsheet reflecting the agreed actual damage deposit not returned for each of 140 claimants, totaling $86,554.19.

The parties' agreement did not extend to restitution on the mail fraud counts arising from the insurance fraud scheme or the tax counts. The Declaration of Victim's Losses submitted by AFI, the victim of the insurance fraud scheme giving rise to the mail fraud charges in **Counts 1** through **6**, requests restitution in the amount of $547,764.44. Miell made no objection to that claim in paragraph 175 of the Final PSIR. Miell also did not object to paragraph 177 of the Final PSIR, which states that the court may order him to pay restitution to the Internal Revenue Service as a condition of supervised release on the charges of filing false tax returns in **Counts 22** and **22**. Again, I determined that the tax loss was $94,080.

## II. LEGAL ANALYSIS

### A. Authority To Order Restitution

As the Eighth Circuit Court of Appeals has recognized, federal courts have no inherent authority to impose restitution: "Federal courts cannot order restitution in a criminal case without a statutory basis." *United States v. Lachowski*, 405 F.3d 696, 698 (8th Cir. 2005). Thus, the question is whether restitution is allowed or required pursuant to a statute for the charges in this case.

Restitution is mandatory pursuant to the Mandatory Victims Restitution Act (MVRA) for certain specified offenses, including "an offense against property under this title [Title 18], . . . including any offense committed by fraud or deceit." 18 U.S.C.

6

§ 3663A(a)(1) and (c)(1).[6] The mail fraud offenses, under 18 U.S.C. § 1341, charged in **Counts 1** through **18** in this case, plainly fall within the mandatory restitution requirements of the MVRA, as they are offenses against property under Title 18 committed by fraud or

---

[6]Specifically, the cited provisions of the MVRA provide as follows:
> **(a)(1)** Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.
>     * * *
> **(c)(1)** This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—
>> **(A)** that is—
>>> **(i)** a crime of violence, as defined in section 16;
>>> **(ii)** an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or
>>> **(iii)** an offense described in section 1365 (relating to tampering with consumer products); and
>> **(B)** in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(a)(1) and (c)(1). The Supreme Court has noted the difference between the "mandatory" requirement of restitution in § 3663A(a)(1), for the specified offenses, and 18 U.S.C. § 3663(a)(1), which states that a court "may" order restitution when sentencing defendants convicted of other specified crimes. *See Dolan v. United States*, ___ U.S. ___, ___, 130 S. Ct. 2533, 2539 (2010).

deceit, and they have identifiable victims who have suffered pecuniary loss. 18 U.S.C. § 3663A(c)(1)(A)(ii) and (B).

The perjury and tax charges in this case, however, do not fall within the requirements for mandatory restitution under the MVRA, as they are not crimes of violence, crimes against property, or crimes involving tampering with consumer products. *See* 18 U.S.C. § 3663A(c)(1). Nor do they fall within the requirements for restitution under any other statute. *See* 18 U.S.C. § 3663. Although there is no statutory provision for "restitution" of tax losses, payment of delinquent taxes may be ordered as a condition of supervised release on tax offenses pursuant to 18 U.S.C. § 3583(d). *See, e.g., United States v. Miller*, 557 F.3d 910, 918 (8th Cir. 2009) (a condition of release requiring payment of outstanding taxes pursuant to § 3583(d) does not violate the MVRA, because it "does not impose a restitution requirement; it imposes a requirement that [the defendant] comply with the tax laws—including the payment of his outstanding tax obligations," and citing cases so holding); *see also United States v. Miller*, 557 F.3d 919, 921 (8th Cir. 2009); 18 U.S.C. § 3583(d) (requiring sentencing courts to order as a condition of supervised release that a defendant refrain from committing a federal, state, or local crime); *and compare United States v. Batson*, 608 F.3d 630, 632-33 (9th Cir. 2010) (noting that restitution for tax crimes pursuant to Title 26 is not authorized by either the MVRA, 18 U.S.C. § 3663A, or the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, but "[t]hese two statutes . . . are not the only statutory sources of authority for orders of restitution by the federal courts," because 18 U.S.C. § 3563(b) (the Probation Statute), which authorizes courts to order "restitution" as a condition of probation, and 18 U.S.C. § 3583(d), which extends that authority to supervised release, do apply to tax offenses).

## B. Determination Of Restitution Amounts

### 1. Restitution for the mail fraud counts

Restitution pursuant to the MVRA is required for the mail fraud offenses in this case. The Eighth Circuit Court of Appeals recently explained the requirement of restitution under the MVRA, as follows:

> Restitution may be ordered "for criminal conduct that is part of a broad scheme to defraud, even if the defendant is not convicted for each fraudulent act in the scheme." *United States v. DeRosier*, 501 F.3d 888, 897 (8th Cir. 2007).
>
> The statute provides that the court shall award as restitution "the full amount" of a victim's losses. 18 U.S.C. § 3664(f)(1)(A). "Congress intended that restitution be a compensatory remedy from the victim's perspective." *United States v. Petruk*, 484 F.3d 1035, 1038 (8th Cir. 2007). Therefore, restitution is limited to "the victim's provable actual loss." *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008). We review a finding of the amount of loss for clear error; the government has the burden of proof on this issue. *Id.* at 752. Although the gross amounts of theft [or fraud] loss for sentencing purposes and victim loss for restitution purposes are often calculated in the same manner, . . . the two determinations serve different purposes and thus may differ depending on the relevant facts. *See United States v. Stennis-Williams*, 557 F.3d 927, 928 (8th Cir. 2009) (affirming $238,340 in fraud loss and only $56,134 in restitution).

*United States v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010). "The United States Sentencing Guidelines Manual incorporates the MVRA formula for restitution of the full amount of

victim loss." *United States v. Carruth*, 418 F.3d 900, 902 (8th Cir. 2005) (citing U.S.S.G. § 5E1.1(a)).[7]

Under the MVRA, "the amount of restitution must be within the scope of the crime charged in the indictment." *Carruth*, 418 F.3d at 902. However, "[i]n ordering restitution pursuant to the MVRA, a district court must order restitution in full without considering the defendant's economic circumstances." *United States v. Ruff*, 420 F.3d 772, 774 (8th Cir. 2005) (citing 18 U.S.C. § 3664(f)(1)(A)). The Eighth Circuit Court of Appeals has also noted that "[s]ection 3664(f)(1)(B) declares: 'In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance *or any other source* be considered in determining the amount of restitution.'" *Id.* (quoting 18 U.S.C. § 3664(f)(1)(B), with emphasis added by that court). Thus, other compensation to a *victim* cannot be offset against a defendant's restitution amount. *Id.* Other compensation may be treated as a credit against the defendant's restitution obligation, however, even if it cannot be treated as a reduction in the amount of that

---

[7]U.S.S.G. § 5E1.1(a) provides as follows:
   **(a)** In the case of an identifiable victim, the court shall—
      **(1)** enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § 1593, § 2248, § 2259, § 2264, § 2327, § 3663, or § 3663A, or 21 U.S.C. § 853(q); or
      **(2)** impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section.

obligation in the first instance. *See United States v. Elson*, 577 F.3d 713, 733 (6th Cir. 2009); 18 U.S.C. § 3664(j)(2).[8]

---

[8]Miell may be entitled to a *credit* against his restitution obligation on **Counts 1** through **6**, the mail fraud counts arising from the insurance fraud scheme, as the result of the judgment obtained by AFI against him in a civil action. The Sixth and Ninth Circuit Courts of Appeals have recognized that "any offsets stemming from a victim's compensation from other sources are 'to be handled separately [from the determination of the amount of restitution] as potential credits against the defendant's restitution obligation—not as reductions in the amount of that obligation in the first instance.'" *Elson*, 577 F.3d at 733 (quoting *United States v. Bright*, 353 F.3d 1114, 1121 (9th Cir. 2004), and citing 18 U.S.C. § 3664(f)(2), but quoting in a parenthetical language found in present 18 U.S.C. § 3664(j)(2)); *see also* 18 U.S.C. § 3664(j)(2) ("(2) Any amount paid to a victim under an order of restitution shall be reduced by any amount *later recovered* as compensatory damages for the same loss by the victim in . . . (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." (emphasis added)). As the Sixth Circuit Court of Appeals has noted, "courts also have recognized that a defendant should not have to pay a victim for the same loss twice. . . . Thus, 'when determining the amount of a restitution award under the MVRA, the court must "reduce restitution by any amount the victim received as part of a civil settlement" . . . to avoid[] the undesirable result of restitution effectuating a double recovery.'" *Elson*, 577 F.3d at 734 (quoting *United States v. Gallant*, 537 F.3d 1202, 1250 (10th Cir. 2008), with internal citations omitted by the *Elson* court). I can think of no reason why the rule should be different for a civil judgment than it is for a civil settlement, because the same "double recovery" problem arises in both circumstances. However, the burden to prove an offset lies with Miell, *id.*, and he has not thus far attempted to prove an offset *against his restitution obligation*, although he did argue that AFI's judgment against him reduced or eliminated any "loss" from the insurance fraud scheme for sentencing purposes. I take no position in this order on whether Miell may ultimately be able to prove an offset against the restitution obligation on **Counts 1** through **6** pertaining to the insurance fraud scheme. I also take no position on whether the authorization for an offset in 18 U.S.C. § 3664(j)(2) only for a *later* recovery is determinative here, except to note that AFI's civil case resulted in AFI's award of compensatory damages *before* restitution was ordered in this case; I do not know if AFI has actually recovered all of its compensatory damages from Miell.

As noted above, the Declaration of Victim's Losses submitted by AFI, the victim of the insurance fraud scheme giving rise to the mail fraud charges in **Counts 1** through **6**, requests restitution in the amount of $547,764.44. Although the amount claimed for restitution exceeds the amount of loss from the insurance fraud scheme that I found for purposes of sentencing, that difference is of no moment. *See Lange*, 592 F.3d at 907 ("Although the gross amounts of theft [or fraud] loss for sentencing purposes and victim loss for restitution purposes are often calculated in the same manner, . . . the two determinations serve different purposes and thus may differ depending on the relevant facts."). The larger amount appears to include interest, attorneys fees, and other costs. Miell made no objection to that claim in paragraph 175 of the Final PSIR, even though he contended at the sentencing hearing that AFI's loss amount, for purposes of sentencing, was zero, because AFI had been fully compensated, *inter alia*, by the judgment that AFI obtained against him in its civil case. Even if Miell has somehow fully compensated AFI for the claimed loss, other compensation to a victim cannot be offset against a defendant's restitution amount. *Ruff*, 420 F.3d at 774; 18 U.S.C. § 3664(f)(1)(B); *but see* 18 U.S.C. § 3664(j)(2) (permitting a credit against the restitution obligation for compensation to the victim). Therefore, I find that the total amount of loss claimed by AFI is within the scope of the mail fraud offenses charged in **Counts 1** through **6**. *See Carruth*, 418 F.3d at 902. I also find that the total amount of loss claimed is the "full amount" of AFI's loss for purposes of restitution. *See id.*; 18 U.S.C. § 3664(f)(1)(A). Therefore, I will order restitution on **Counts 1** through **6** in the amount of $547,764.44.

The Final PSIR, ¶ 176, identified the total loss from the damage deposit fraud scheme giving rise to the mail fraud charges in **Counts 7** through **18** that was subject to restitution to be $198,173.11. That amount was based on the Declarations of Victims' Losses provided by the victims of the damage deposit fraud scheme who had come forward

or been located, shown in Attachment A to the Final PSIR. As explained above, however, Miell and the prosecution have reached an agreement concerning the amount of restitution applicable to the mail fraud charges in **Counts 7** through **18**, arising from the damage deposit fraud scheme. That agreement with respect to all 140 claims made by former tenants who had been identified as victims and who reported losses (obviating the need to hear disputed claims of 79 victims) is for restitution in the total amount of $86,554.19. The specific individual amounts range from $10 (Victim # 77) to $2,390 (Victim # 92). The apparent discrepancy between the total amount of restitution upon which the parties have agreed, $86,554.19, and the total amount of loss from the damage deposit fraud scheme that I determined for sentencing purposes, in excess of $1 million, is of no moment. *See Lange*, 592 F.3d at 907 ("Although the gross amounts of theft [or fraud] loss for sentencing purposes and victim loss for restitution purposes are often calculated in the same manner, . . . the two determinations serve different purposes and thus may differ depending on the relevant facts."). Pursuant to the agreement of the parties, I find that the total amount of loss and the individual loss amounts are within the scope of the mail fraud offenses charged in **Counts 7** through **18**. *See Carruth*, 418 F.3d at 902. I also find that the total amount of loss and the individual loss amounts are the "full amount" of these victims' losses for purposes of restitution. *See id.*; 18 U.S.C. § 3664(f)(1)(A). Therefore, I will order restitution for the agreed total amount and the agreed specific amounts for each identified victim, as set out in the Appendix, below, on **Counts 7** through **18**. However, the Appendix will be filed under seal to protect the confidentiality of the victims.

   2.   *__Restitution for the perjury counts__*

No restitution was claimed on the perjury counts, **Counts 19** and **20**, and none will be awarded. Restitution is not available on the perjury counts pursuant to § 3663A or § 3663, nor does any other "restitution" statute appear to be applicable to those offenses.

Therefore, the court is without authority to award restitution on those counts. *See Lachowski*, 405 F.3d at 698 ("Federal courts cannot order restitution in a criminal case without a statutory basis.").

### 3. *"Restitution" for the tax counts*

As noted above, "restitution" is not available on the tax counts, **Counts 22** and **23**, pursuant to 18 U.S.C. § 3663A or § 3663, but the court may order payment of delinquent taxes as a condition of supervised release on tax offenses pursuant to 18 U.S.C. § 3583(d). *See, e.g., Miller*, 557 F.3d at 918. I determined that the tax loss in this case was $94,080. I will order repayment of this amount in delinquent taxes as a condition of supervised release.

## C. Payment Schedule

Although a defendant's economic circumstances are not relevant to the determination of the *amount* of restitution, they are relevant to the *manner of payment* of restitution. *Compare* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."), *with* 18 U.S.C. § 3664(f)(2) (allowing the court to consider the defendant's circumstances when determining the manner in which restitution must be paid); *see also Ruff*, 420 F.3d at 774 ("In ordering restitution pursuant to the MVRA, a district court must order restitution in full without considering the defendant's economic circumstances."). Specifically, the MVRA provides that, when considering "the manner in which, and the schedule according to which, the restitution is to be paid," the court may consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled"; "projected earnings and other income of the defendant"; and "any

financial obligations of the defendant, including obligations to dependents." 18 U.S.C. § 3664(f)(2) (also providing that lump-sum or periodic payments may be required, and that only "nominal periodic payments" may be required, if the defendant's circumstances do not allow for payment of the full amount in the foreseeable future under any reasonable schedule).

In the September 27, 2010, Memorandum Opinion And Order Regarding Sentencing (docket no. 311), I noted that Miell had amassed substantial personal wealth, apparently by legitimate means. However, I also noted that the present condition of Miell's finances is confusing, because of his bankruptcy and the likelihood that mortgages have been foreclosed by now on a substantial number of his properties. For that reason, I imposed a fine of $250,000, the top of the advisory sentencing guidelines range, but well below the total of the fines on each separate count that I could have imposed. Nevertheless, I find that Miell still has substantial financial resources from which to pay restitution. *See* 18 U.S.C. § 3664(f)(2)(A). I also find that he has substantial financial obligations, in light of the judgment in AFI's civil case, *see* 18 U.S.C. § 3664(f)(2)(C), and his bankruptcy, but I do not find that those obligations should stand in the way of restitution in this case. Nor has Miell argued that he requires a specific payment arrangement to satisfy any restitution judgment. Therefore, I will order payment of restitution on **Counts 1** through **6** in the amount of $547,764.44 and restitution on **Counts 7** through **18** in the total amount of $86,554.19 to be paid to the respective victims in a lump sum. *See* 18 U.S.C. § 3664(f)(3)(A) (authorizing, *inter alia*, lump-sum payment of restitution).

Finally, I can only order repayment of the delinquent amount of $94,080 as a condition of release pursuant to 18 U.S.C. § 3583(d), not as "restitution." Although doing so seems particularly pointless, when the defendant will not be eligible for supervised release for a considerable period of time, when he is sentenced to 240 months of

15

imprisonment, I will require repayment of the delinquent taxes, on terms and conditions to be established at the appropriate time, as a condition of release.

## III. CONCLUSION

Upon the foregoing,

1. Defendant Miell is ordered to pay restitution in the amount of $547,764.44, in a lump sum, due and payable not later than November 1, 2010, as restitution to American Family Insurance, pursuant to 18 U.S.C. § 3663A, on **Counts 1** through **6**;

2. Defendant Miell is ordered to pay restitution in the total amount of $86,554.19, in the lump sums due each victim identified in Appendix A, filed under seal, due and payable not later than November 1, 2010, as restitution to those victims, pursuant to 18 U.S.C. § 3663A, on **Counts 7** through **18**;

3. Defendant Miell shall, as a condition of release, and on terms and conditions to be established at the appropriate time, pay to the Internal Revenue Service delinquent taxes for 2001 and 2002 in the amount of $94,080, pursuant to 18 U.S.C. § 3583(d).

**IT IS SO ORDERED.**

**DATED** this 4th day of October, 2010.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA